IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSHUA PEREZ,

*Plaintiff,*

v.

GEORGE MARTIN, et al.,

*Defendants.*

CIVIL ACTION
NO. 24-5695

Pappert, J.                                                    May 28, 2026

**<u>MEMORANDUM</u>**

*Pro se* state prisoner Joshua Perez sued six correctional officers alleging excessive force, failure to intervene and failure to train.  The officers move for partial summary judgment, and the Court grants their motion.

I

During February of 2023, Joshua Perez was an inmate at the State Correctional Institution, Phoenix.  (Perez Dep. at 32:17–18, Dkt. No. 61-2.)  He was in the restrictive housing unit because he had thrown another inmate off the top tier of the prison.  (*Id.* at 33:1–2.)  Perez was also a "high-risk inmate" meaning he had an assault history and/or posed an escape risk.  (George Martin Decl. ¶ 15, Dkt. No. 61-3.)

On February 7, 2023, Perez attempted to kill himself by slitting his stomach, sticking a paperclip into his opened abdomen and swallowing two spoons and a pen.  (Perez Dep. at 39:12–25, 40:12–14); (Emergency Room Transfer Form at 1, Dkt. No. 61-6.)  This prompted prison officials to transport Perez to Grandview Hospital where he had surgery.  (Perez Dep. at 40:6–19.)

1

On February 10, six correctional officers—George Martin, Darrell Parks, Melvin Young, Robert Fletcher, Tyrone Garvin and Kevin Johnson—helped to transport Perez from Grandview to SCI Phoenix.  (Defs.' Statement of Undisputed Material Facts ¶ 23, Dkt. No. 61.)  Before Perez left the hospital, Johnson, Fletcher and Martin placed a remotely activated custody control belt around his waist.  *See* (Perez Dep. at 46:7).  RACC belts "are used to restrain and control the behavior of inmates during escorts to . . . ensure safety."  (Robert Williamson Decl. ¶ 9, Dkt. No. 61-9.)  High-risk inmates, like Perez, must wear the belt during transports.  (*Id.* ¶ 10); (Martin Decl. ¶ 17.)  An escorting officer carries a transmitter device, which he can use to activate the belt.  (Williamson Decl. ¶ 9.)  If activated, the belt shocks the individual and immobilizes him.  (Martin Decl. ¶ 33); (RACC Belt Inmate Notification Form at 63, Dkt. No. 61-8.)  After he placed the RACC belt on Perez, Martin warned him that he would activate the belt if Perez refused to obey an officer's orders during the transport back to SCI Phoenix.  (Martin Decl. ¶ 19.)

Parks and Young then escorted Perez to a van outside the hospital.  (Perez Dep. at 42:24.)  Parks, Young, Johnson, Fletcher and Martin were standing outside the van with Perez, while Garvin was inside.  (*Id.* at 46:23–24); (Martin Decl. ¶ 23.)  Perez tensed his body, refusing to step inside the van.  (Martin Decl. ¶ 24.)  Martin—and other officers—ordered Perez to get in the van, but he started cursing and screaming that he would not obey.  (*Id.* ¶ 26.)  Martin believed Perez could injure himself or the officers.  (*Id.* ¶ 27.)  He could kick, shove or headbutt the officers.  (*Id.*)  Perez then spit on Garvin, who was sitting in the van.  (Perez Dep. at 51:11–13.)  Martin and the officers again told Perez to get in the van.  (Martin Decl. ¶ 29.)  Martin also ordered

2

Garvin into the driver's seat, so that he would be away from Perez, given that Perez had just spit on him. (*Id.* ¶ 30.) At this point, Martin again ordered Perez into the van and warned him that if he did not comply, he would shock him. (*Id.* ¶ 32.) Perez refused to obey and kept cursing at Martin. (*Id.*) Perez then says Garvin and Parks punched him and Martin activated his belt shocking him. (Perez Dep. at 51:16–23, 52:1–7). After the officers got Perez in the van, (Martin Decl. ¶ 34), he started kicking the van's door, (Perez Dep. at 53:11–12), and Martin ordered him to stop, (Martin Decl. ¶ 37). Perez didn't stop, and "after" Perez "kick[ed] the door off the hinges," Martin activated the belt. (Perez Dep. at 55:2–4.)

The officers then called a second van because Perez had damaged the original. (Martin Decl. ¶ 39.) Once they transported Perez back to SCI Phoenix, (*id.*), the officers brought him to a medical professional, (Perez Dep. at 57:22–24). Perez says he suffered a swollen jaw, a cut nose, neck pain and back blisters. (*Id.* at 60:10–12.) Perez's neck pain went away, (*id.* at 60:24), and a medical provider gave him "ointment" for his blisters, which worked "well," (*id.* at 60:1–8).

Perez sued Martin, Parks, Young, Fletcher, Garvin and Johnson under 42 U.S.C. § 1983. He alleges Martin, Parks and Garvin used excessive force against him, failed to intervene and failed to train each other. And he claims Young, Fletcher and Johnson failed to intervene. The officers moved for partial summary judgment, focusing only on the claims premised on Martin's activation of the RACC belt. Perez failed to respond.

## II

Federal Rule of Civil Procedure 56 directs a district court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This language compels judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A nonmoving party fails to satisfy this standard if "the record taken as a whole could not lead a rational trier of fact to find" in his favor. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citation omitted). The nonmoving party must identify "specific facts, as opposed to general allegations," establishing each element of his claim. 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2727.2, WESTLAW (database updated 2025). Where, as here, a party fails to address another party's assertion of fact, the Court may "consider the fact undisputed." Fed. R. Civ. P. 56(e)(2); *see Robinson v. N.J. Mercer Cnty. Vicinage-Fam. Div.*, 562 F. App'x 145, 148 (3d Cir. 2014) (per curiam) (holding a district court did not err by deeming undisputed the defendant's statement of fact where the *pro se* plaintiff failed to oppose that fact); *Doe v. United States*, No. 19-cv-1673, 2020 WL 1663336, at *3 n.2 (M.D. Pa. Apr. 3, 2020) (explaining Rule 56(e)(2) permits a court to consider the facts set forth by the defendant as undisputed if a *pro se* plaintiff fails to address them).

III

Section 1983 makes "liable" "[e]very person" who "under color of" state law "subjects" another person "to the deprivation of any rights, privileges, or immunities secured by the Constitution" and federal law. 42 U.S.C. § 1983. This provision does not contain substantive rights. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). It merely

4

provides a cause of action for vindicating rights found in the United States Constitution or another federal law.  *See id.*

A

Perez alleges Martin used excessive force against him in violation of the Eighth Amendment.  The Eighth Amendment, applicable to state officials through the Fourteenth Amendment, provides that "cruel and unusual punishments" "shall not be . . . inflicted."  U.S. Const. amend. VIII.  This language applies to convicted prisoners who have already received formal punishment for a crime.  *See Whitley v. Albers*, 475 U.S. 312, 318 (1986).  Relevant here, the Eighth Amendment's ban on "cruel and unusual punishments" regulates the force that prison officials may inflict on prisoners during their terms of incarceration.  *Id.* at 320.

An Eighth Amendment excessive force claim has objective and subjective elements.  *Ricks v. Shover*, 891 F.3d 468, 480 (3d Cir. 2018).  The defendants argue Perez cannot satisfy the subjective element.  As a subjective matter, harm to a prisoner must result from a prison official's sufficiently volitional actions because the Eighth Amendment bars only willful conduct that "inflict[s]" "punishment."  *Wilson v. Seiter*, 501 U.S. 294, 300 (1991).  The "core judicial inquiry" is whether the officer used force in a "good-faith effort to maintain or restore discipline" or instead used force "maliciously and sadistically to cause harm."  *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (citation omitted).  Only force exerted maliciously and sadistically to inflict pain violates the Eighth Amendment's ban on cruel and unusual punishments.  *Hudson v. McMillian*, 503 U.S. 1, 5–7 (1992).

5

To decide whether a jury could find that an officer acted with malicious intent, the Court considers five factors: (1) the need for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the threat to the safety of staff as reasonably perceived by responsible officials on the basis of the facts known to them; (4) any efforts to temper the severity of a forceful response; and (5) the extent of the injury inflicted. *Whitley*, 475 U.S. at 321. In applying these factors, the Court must keep in mind that prison officials have "wide-ranging deference" to "preserve internal order and discipline." *Id.* at 321–22 (citation omitted). As applied, the five factors show Perez lacks sufficient evidence to prove Martin's malicious intent.

1

To begin, Martin had a "need" to use force against Perez. *Id.* at 321 (citation omitted). In the prison context "[o]rders given must be obeyed." *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984). "Inmates cannot be permitted to decide which orders they will obey, and when they will obey them." *Id.* Thus, prison officials generally have a need to use force to compel an inmate to follow an order he has refused to obey. *See Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008) (holding prison officials have a need to use force to compel an inmate to return to his cell after the inmate has refused to obey).[1]

---

[1]    This rule is well-established. *See, e.g.*, *Brooks v. Johnson*, 924 F.3d 104, 117–18 (4th Cir. 2019) (explaining prison officials may use force to "secure" an inmate's "cooperation" because prisoners "cannot be permitted to decide which orders they will obey, and when they will obey them") (citation omitted); *Caldwell v. Moore*, 968 F.2d 595, 601 (6th Cir. 1992) (prison officials have a need to use force to coerce an inmate into compliance with an order he has refused to obey because a "jail has a legitimate interest in having inmates obey orders" and inmates "cannot be permitted to decide which orders they will obey, and when they will obey them") (citation omitted); *Redmond v. Crowther*, 882 F.3d 927, 937–38 (10th Cir. 2018) (prison officials have a need to use force when an inmate refuses to comply with orders because "prisoners cannot be permitted to decide which orders

6

Perez spit on Garvin, was screaming and cursing and refused to obey the officers' repeated commands to get in the transport van, prompting a need for force.  And after he got into the van, Perez refused to comply with Martin's commands to stop kicking the van's door—he kicked the door off the hinges—again prompting a need for force.

2

Next, Martin used an amount of force proportional to the need for "control[ling]" Perez "who . . . failed to obey a jailer's orders." *Danley*, 540 F.3d at 1307.  Courts routinely hold that the reasonable use of pepper spray, mace, a taser or stun gun (or other like instruments) is a proportional level of force in response to a prisoner's refusal to follow orders.  *See, e.g., id.* (a "short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders"); *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) (a "limited application of mace" is proportional to control an inmate); *Peterson v. Heinen*, 89 F.4th 628, 636 (8th Cir. 2023) (a limited "use of chemical spray" is proportional to control an inmate); *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000) (a "limited application of capstun to control a recalcitrant" inmate is permissible); *see also Hunter v. Young*, 238 F. App'x 336, 339

---

they will obey, and when they will obey them") (citation omitted); *see also Rendelman v. Scott*, 378 F. App'x 309, 313 (4th Cir. 2010) (per curiam) (a prison official's right to order a prisoner to do something "must necessarily carry with it the right to use a reasonable degree of force that is sufficient to ensure compliance" else the official's ability to control an inmate would be "rendered meaningless"); *Jennings v. Peiffer*, 110 F. App'x 643, 645–46 (6th Cir. 2004) (rejecting a prisoner's argument that he has a right to question a prison official's order and holding that correctional officers may use force to enforce an order because they are "not required to wait and see if [the inmate] [will] have a change of heart"); *Siggers v. Renner*, 37 F. App'x 138, 140 (6th Cir. 2002) (a prison guard's "application of force was needed" because an inmate "refused to obey" an order); *Miles v. Jackson*, 757 F. App'x 828, 830 (11th Cir. 2018) (per curiam) (prison officials had a need to use force when an inmate refused to obey an order to step back further in his cell).

(10th Cir. 2007) (the reasonable "use of a taser or similar stun gun" is acceptable to "compel obedience by inmates").[2]

Again, Perez spit on Garvin, was screaming and cursing and refused to obey the officers' commands to get in the transport van. Only after Martin activated the belt were the officers able to get Perez into the van. (Martin Decl. ¶¶ 33–34); *see, e.g.*, *Peterson*, 89 F.4th at 636 (holding correctional officer reasonably used chemical spray to control an inmate who was cursing, threatening, and spitting at officers). Once Perez was in the van, he started the kicking the van's door and refused to obey Martin's commands to stop. Again, Perez was put in control only after Martin activated the belt.

Perez's allegation that Martin activated his belt twice after each incident (thus, for a total of four times) does not change the calculus. Nothing suggests Martin shocked Perez "gratuitously," *Wilkins*, 559 U.S. at 38, or more than necessary to control him, *Soto*, 744 F.2d at 1270. The undisputed facts show Martin used the belt to control Perez. Neither courts nor juries may second-guess Martin's "split-second judgments" about the necessary amount of force made in this "tense" and "uncertain" situation. *Graham*, 490 U.S. at 297 (excessive force in the Fourth Amendment context). Perez

---

[2]    *See also Passmore v. Ianello*, 528 F. App'x 144, 148 (3d Cir. 2013) (per curiam) (the reasonable use of pepper spray is a proportional level of force in response to a prisoner's refusal to comply with an order); *Jones v. Wetzel*, 737 F. App'x 61, 65–66 (3d Cir. 2018) (per curiam) (an amount of pepper spray "limited to the amount necessary" to ensure a prisoner complies with an order is permissible); *Banks v. Mozingo*, 423 F. App'x 123, 126–27 (3d Cir. 2011) (per curiam) (a prison official reasonably used a taser and mace against a prisoner, first after he refused to comply with an order and second after he spat at the official); *Camp v. Brennan*, 54 F. App'x 78, 80 (3d Cir. 2002) (prison guard reasonably stunned prisoner after he refused to walk through a door); *Horne v. Rutledge*, 398 F. App'x 264, 265 (9th Cir. 2010) (order) (guards reasonably pepper sprayed inmate after he refused to comply with orders).

cannot show, on this record, that Martin activated the belt for the exclusive purpose to inflict pain.  *Whitley*, 475 U.S. at 320–21.

3

In addition, Martin had at least a "plausible basis" to believe Perez posed a threat.  *Id.* at 323.  Martin knew Perez had a "demonstrated . . . propensity for violence."  *Caldwell*, 968 F.2d at 601.  Perez lived in restrictive housing and was a high-risk inmate because he assaulted another inmate.  He also tried to kill himself by cutting his stomach open.

And before Martin activated Perez's belt, Perez posed a "security risk." *Campbell v. Sikes*, 169 F.3d 1353, 1376 (11th Cir. 1999).  Perez spit on an officer, which is battery.  *See, e.g.*, *United States v. Stoddard*, 407 F. App'x 231, 234 (9th Cir. 2011) (explaining that when an inmate spits on a prison official he commits battery).  He refused to comply with multiple orders to get in the transport van.  And he was screaming and cursing.  These facts give an officer a plausible basis to believe an inmate poses a threat.  *See Peterson*, 89 F.4th at 636.  Finally, after the officers got Perez into the van, he began kicking the door.  Martin warned him to stop and shocked Perez only after he kicked the door off the hinges.

4

Next, Martin tried to temper the severity of his force.  *Whitley*, 475 U.S. at 321. He warned Perez he would shock him if he did not comply with his orders.  But Perez did not "heed any warning that force was coming."  *Hughes v. Rodriquez*, 31 F.4th 1211, 1222 (9th Cir. 2022).  And the "circumstances following the forceful response" suggest Martin did not act with sadistic intent to cause pain.  *Segrain v. Duffy*, 118 F.4th 45, 63

9

(1st Cir. 2024).  The officers did not "unnecessarily and substantially prolong[]" medical treatment.  *Id.*; *Iko v. Shreve*, 535 F.3d 225, 240 (4th Cir. 2008).  Perez was instead "offered prompt medical assistance." *Shiheed v. Harding*, 802 F. App'x 765, 767 (4th Cir. 2020) (per curiam).  After the officers secured a second van to transport Perez—Perez destroyed the first—they immediately took him to a medical professional.

5

Finally, Perez did not suffer serious injuries.  *Hudson*, 503 U.S. at 7; *Washington v. Ondrejka*, 822 F. App'x 104, 106 (3d Cir. 2020) (per curiam).  Perez says he sustained a swollen jaw, a cut on his nose, neck pain and back blisters.  (Perez Dep. at 60:10–12.)  But his neck pain went away, (*id.* at 60:24), and a medical provider gave him "ointment" for his blisters which worked "well," (*id.* at 60:1–8).

These injuries were minor.  Perez "suffered no broken, dislocated, or fractured bones." *Bullocks v. Hale*, No. 23-3428, 2021 WL 1578198, at *2 (6th Cir. 2021).  Nor did he have "cuts, scrapes, [and] contusions" all over his "face, head, and body." *Gomez v. Chandler*, 163 F.3d 921, 925 (5th Cir. 1999).  Perez neither suffered permanent injury, *Williams v. Collier*, 357 F. App'x 532, 535 (4th Cir. 2009) (per curiam), nor did he need significant medical treatment such as surgery, *Rankin v. Klevenhagen*, 5 F.3d 103, 108 (5th Cir. 1993).  And nothing shows Perez's injuries "interfere with his . . . daily life." *Hughes v. Rodriquez*, 31 F.4th 1211, 1222 (9th Cir. 2022).

At bottom, Perez's injuries were "temporary" in nature, *Green v. Bledsoe*, 534 F. App'x 100, 104 (3d Cir. 2013) (per curiam), akin to "minor lacerations and cuts," *Lockett v. Suardini*, 526 F.3d 866, 876 (6th Cir. 2008) (citation omitted), and "tenderness,

bruising, and slight swelling," *Bullocks*, 2021 WL 1578198, at \*2.  Such injuries would

not show Martin had a sadistic intent to inflict pain.[3]

B

Perez next claims Martin, Parks, Garvin, Johnson, Fletcher and Young failed to

intervene to prevent Martin's excessive force.  Section 1983 imposes on a state officer a

"duty to take reasonable steps to protect a victim from another officer's use of excessive

force." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002).  To prevail, Perez must

show (1) Martin used excessive force against him (2) the other officers had a realistic

and reasonable opportunity to intervene and (3) they refused to do so.  *Id.* at 652.[4]

Perez cannot satisfy the first element because on this record Martin did not use

excessive force when he shocked Perez to control him.

C

Finally, Perez brings failure to train claims against Parks and Garvin[5] arguing

they failed to train Martin on how to properly use the RACC belt causing his excessive-

force injury.  A supervisor may be liable for his failure to train a subordinate.  *See*

---

[3]     Qualified immunity also shields Martin.  This doctrine shields public officials from the time and expense of a trial unless their actions infringed "clearly established" legal rights that a "reasonable person" would have understood.  *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) (per curiam) (citation omitted).  Qualified immunity seeks to give officials "fair notice" about when their actions will subject them to liability.  *Id.*  The Court has not found any clearly established legal right that would have put Martin on notice that he could not activate a high-risk inmate's RACC belt multiple times after the inmate (1) spit on an officer, (2) was screaming and cursing, (3) refused multiple orders to enter a transport van outside of a hospital, (4) refused multiple orders to stop kicking the van's door and (5) kicked the van's door so hard it broke.  *De Boise v. Taser Int'l, Inc.*, 760 F.3d 892, 897 (8th Cir. 2014) (holding as of 2014 a "violent subject, acting aggressively toward officers" did not have a "clearly established right to be free from multiple tasings").

[4]     Perez cannot bring a failure to intervene claim against Martin.  *See Dimoff v. Amarose*, No. 22-cv-72, 2024 WL 3330566, at \*14 (M.D. Pa. July 8, 2024) (explaining "a defendant alleged to have used excessive force cannot fail to intervene in [his] own alleged conduct").

[5]     To the extent Perez brings a failure to train claim against Martin, it fails.  Martin cannot be liable for failing to train himself.

*Sample v. Diecks*, 885 F.2d 1099, 1117–18 (3d Cir. 1989).  Perez must show that Parks and Garvin supervised Martin and that they acted with deliberate indifference to his constitutional rights.  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

As an initial matter, no reasonable jury could find that Martin used excessive force, so Perez cannot show Parks and Garvin acted with deliberate indifference to his constitutional rights.  Perez also fails to establish Parks and Garvin supervised Martin. A supervisor controls or has the right to control a subordinate in the performance of his job.  *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1295 (3d Cir. 1997).  Nothing in the record indicates Parks or Garvin controlled or had the right to control Martin.

Lastly, Perez fails to introduce sufficient evidence to establish Parks and Garvin acted with deliberate indifference.  This "stringent standard of fault" requires proof a state official "disregarded a known or obvious consequence" of his failure to train.  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997).  In most cases, deliberate indifference requires a plaintiff to show an employee engaged in a "pattern of similar constitutional violations."  *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Nothing shows Martin engaged in a pattern of similar constitutional violations.

Plaintiffs may, however, also prove deliberate indifference through use of a single incident of unconstitutional conduct.  If the need for a certain type of training is sufficiently obvious, the failure to provide the obviously needed training may "properly be characterized as 'deliberate indifference' to constitutional rights."  *City of Canton*, 489 U.S. at 390 n.10.  Even if the need for training in use of the RACC belt is sufficiently obvious to trigger single-incident liability, Perez cannot establish Parks and Garvin failed to adequately train Martin.  He says that Martin "got no training to use

the rack belt.  [Parks and Garvin] never really told [Martin] what to do with the . . .

belt, so nobody explained to him." (Perez Dep. at 72:22–23.)  This conclusory assertion,

unsupported by any record evidence, does not suffice.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

Gerald J. Pappert, J.

13